| | | |
|---|---|---|
| ISSAM DAAS SUAOUD, | * | IN THE |
| Plaintiff, | * | CIRCUIT COURT |
| v. | * | FOR |
| CAESARS BALTIMORE MANAGEMENT COMPANY, LLC | * | BALTIMORE CITY |
| | * | Case No.: 24-C-17-000318 |
| and | * | |
| JOHN DOE NO. 1 | * | |
| and | * | |
| JOHN DOE NO. 2 | * | |
| and | * | |
| CBAC BORROWER, LLC<br>c/o Corporation Service Company<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808 | * | |
| serve on: | * | |
| CSC-Lawyers Incorporating Service Company<br>7 St. Paul Street<br>Suite 820<br>Baltimore, MD 21202, | * | |
| *Defendants.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes Issam D. Suaoud ("Plaintiff"), who for his complaint against Caesars Baltimore Management Company, LLC; CBAC Borrower, LLC; John Doe No. 1; and John Doe No. 2 (collectively "Defendants") alleges as follows:

LAW OFFICES OF
E. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
BALTIMORE, MD 21202
410-662-6500

1

## PARTIES

1. Plaintiff Issam D. Suaoud, resides in Jacksonville, Florida.

2. Defendant Caesars Baltimore Management Company, LLC ("Caesars Defendant") maintains its principal place of business in Baltimore, Maryland and manages and operates the Horseshoe Baltimore Casino ("Horseshoe") located at 1525 Russell Street in Baltimore, Maryland.

3. The Caesars Defendant is a casino and was not acting as a retail merchant at all times relevant to this dispute.

4. Defendant CBAC Borrower, LLC ("CBAC Defendant") maintains its principal place of business in Baltimore, Maryland, and holds a license from the State of Maryland's Video Lottery Operation Location Commission to operate the Horseshoe casino located at 1525 Russell Street in Baltimore, Maryland.

5. The CBAC Defendant is a casino and was not acting as a retail merchant at all times relevant to this dispute.

6. Defendant John Doe No. 1 is a male of unknown identification who is an employee or agent of the Caesars Defendant and the CBAC Defendant (collectively "Horseshoe Defendants"), and was acting within the scope of his employment or agency as a security guard at all times relevant to this dispute. Based upon information and belief, Defendant John Doe No. 1 is a resident of Maryland.

7. Defendant John Doe No. 2 is a male of unknown identification who is an employee or agent of the Horseshoe Defendants, and was acting within the

LAW OFFICES OF
E. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
BALTIMORE, MD 21202
410-662-6500

scope of his employment or agency as a security guard at all times relevant to this dispute. Based upon information and belief, Defendant John Doe No. 2 is a resident of Maryland.

## PERSONAL JURISDICTION AND VENUE

8. The Court has jurisdiction over this action pursuant to Md. Cts. & Jud. Proc. Code Ann. §§ 6-102; 6-103(b)(1)-(3). The Caesars Defendant and the CBAC Defendant maintain their principle place of business in Baltimore, Maryland. Defendant John Doe No. 1 and Defendant John Doe No. 2 (collectively "Security Guard Defendants") regularly perform work at the Horseshoe Defendants' principle place of business in Baltimore, Maryland. The Defendants can be served with process in Maryland.

9. Venue in the Circuit Court of Maryland for Baltimore City is established by Md. Cts. & Jud. Proc. Ann. § 6-201(a) because Defendants carry on regular business or are employed in Baltimore City.

## STATEMENT OF FACTS

10. On December 26, 2016, the Plaintiff was in Maryland for a work assignment, and during his time off in connection with the Christmas holiday, Plaintiff visited the Horseshoe to gamble at the casino's slot machines.

11. Sometime between 4:00 a.m. and 5:00 a.m., the Plaintiff was playing at the "Colossal Diamonds" slot machine on the Horseshoe's second floor when the Security Guard Defendants approached the Plaintiff. Defendant John Doe No. 1 was wearing a suit jacket, while Defendant John Doe No. 2 was wearing a shirt

LAW OFFICES OF
:. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
3ALTIMORE, MD 21202
410-662-6500

3

that identified him as a security guard.

12. The Security Guard Defendants told the Plaintiff that he had to stop playing and that he needed to "come with us."

13. The Plaintiff then asked why he needed to go with the security guards. The Plaintiff, a Syrian refugee who speaks english as a second language, was unable to understand the Security Guard Defendants' response to his question over the din of the casino.

14. Despite not understanding the Security Guard Defendants' reason for demanding that he stop what he was doing, the Plaintiff came to understand by the guards' body language and expressions that he was not free to refuse their command. The Plaintiff gathered his belongings and indicated to the Security Guard Defendants that he would comply with their demand.

15. The Security Guard Defendants then stood on either side of the Plaintiff and marched him over 100 steps through the Horsehoe's busy casino floor and past hundreds of its patrons, to a hallway off the casino floor and through doors that led to a employee-only backroom area.

16. The Security Guard Defendants then led the Plaintiff down a long hallway to a small room, and instructed the Plaintiff to empty his pockets and his bag, show them some form of identification, and to sit in a chair. The Security Guard Defendants closed the room's door to the hallway and one of the security guards remained positioned next to the closed door.

17. When the Plaintiff asked the Security Guard Defendants why they

LAW OFFICES OF
:. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
3ALTIMORE, MD 21202
410-662-6500

had demanded that he come to this room, the guards told the Plaintiff that he had been detained because he had taken a slot machine payout ticket from a woman on the casino floor and then used the ticket to play on another slot machine.

18. When the Plaintiff denied having taken someone else's payout ticket, the Security Guard Defendants told the Plaintiff that they had seem him take the ticket via the casino's surveillance camera system.

19. The Plaintiff, confident that he had not stolen a payout ticket and that their accusation was a mistake, asked the Security Guard Defendants whether they could show him the video. The Security Guard Defendants refused to show the Plaintiff the video.

20. The Security Guard Defendants then informed the Plaintiff that they had called the police, that a police officer was coming to the room, and that the Plaintiff could not leave.

21. While waiting for the police officer to arrive, the Plaintiff asked one of the Security Guard Defendants for permission to call a friend and inform them of his whereabouts. When that security guard told the Plaintiff that he was allowed to use his cell phone, the Plaintiff attempted to reach two friends, but neither answered their phone.

22. When a male Baltimore City police officer eventually entered the room, the Security Guard Defendants told the officer that the Plaintiff had stolen a woman's payout ticket and that the Security Guard Defendants had witnessed the theft on the casino's surveillance camera system. The Security Guard

LAW OFFICES OF
E. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
BALTIMORE, MD 21202
410-662-6500

5

Defendants stated that the amount of the allegedly stolen payout ticket was between $300.00 and $400.00. These statements were false.

23. The police officer then spoke to the Plaintiff and stated that if the Plaintiff was willing to pay the alleged value of the payout ticket to the woman whose ticket was allegedly stolen, the Plaintiff would not have to go to jail.

24. The Plaintiff insisted that he did not steal a payout ticket from anyone, and that he did not know why he was being accused of the theft.

25. The police officer then instructed the Plaintiff to place his hands behind his back so he could be handcuffed. The Plaintiff calmly complied with the officer's instructions.

26. The Plaintiff, shocked to be placed in handcuffs and fearful of going to jail for the first time in his life, stated to the police officer that he was willing and able to pay the amount of the alleged stolen payout ticket.

27. The officer then asked the Plaintiff if he had changed his mind because the Plaintiff now realized that the officer was serious about taking him to jail. The Plaintiff replied by insisting that he did not steal anything from anyone in the casino, but that his offer to pay the woman was simply to avoid going to jail.

28. The police officer then left the room with one of the Security Guard Defendants, leaving the handcuffed Plaintiff inside a room with a closed door with the other Security Guard Defendant.

29. While the Plaintiff waited for the officer to return, Fadi Tahhan, one

LAW OFFICES OF
E. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
BALTIMORE, MD 21202
410-662-6500

of the friends that the Plaintiff had attempted to call earlier, called the Plaintiff's cell phone. The Plaintiff asked the Security Guard Defendant that was present whether he could answer his phone, which had been removed from the Plaintiff's pocket when he was being handcuffed. That Security Guard Defendant stated that the police officer had told him not to let the Plaintiff use his phone.

30. The Plaintiff then consented to the that Security Guard Defendant answering the call and speaking to Mr. Tahhan.

31. That Security Guard Defendant then answered the Plaintiff's phone, and stated to Mr. Tahhan that the Plaintiff had been detained by the Horseshoe's security staff, that a police officer had come to the casino, and that the Plaintiff was being charged with theft for stealing a payout ticket from someone at the casino.

32. While the Plaintiff waited for the police officer to return, he struggled to contain his emotions as he began to consider the possible consequences of being detained for a crime that he did not commit, in a city far from any family or friends, in a country that had granted him asylum due to an ongoing civil war in his home country. The Plaintiff feared not only being placed in a jail for the first time in his life, but also the possibility that this incident would jeopardize his immigration status in the United States.

33. During Mr. Tahhan's phone conversation with the security guard, he was able to hear the Plaintiff audibly sobbing in the background.

34. Sometime later, the police officer returned to the room and told the

LAW OFFICES OF
E. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
BALTIMORE, MD 21202
410-662-6500

Plaintiff "Sorry" but that the Security Guard Defendants had detained "the wrong guy." The officer then took the handcuffs off the Plaintiff's wrists.

35. The Plaintiff, relieved, but still upset from the experience, gathered his personal belongings while he struggled to maintain his composure and stop himself from crying.

36. When the Plaintiff was finally allowed to leave the supervision of the Security Guard Defendants, the Plaintiff recalls being led into a room where several women glowered at him and made him feel unreasonably guilty while he was being directed out by one of the Security Guard Defendants.

37. The Plaintiff found being detained on the floor of the busy Horseshoe casino, being accused of theft, being placed handcuffs, and being threatened with jail, stressful, upsetting, and deeply embarrassing. For several weeks after December 26, 2016, Plaintiff found that his ability to sleep soundly was affected by this incident.

38. At all relevant times, the Security Guard Defendants acted pursuant to and within the scope of their employment and agency relationships with the Horseshoe Defendants.

39. At all relevant times, the Horseshoe Defendants knew or should have known of the conduct of its security personnel and authorized, ratified, adopted, approved or controlled the conduct of its security personnel.

40. The conduct of the Security Guard Defendants was of the kind they were employed to perform and occurred while they were on duty at their assigned

LAW OFFICES OF
E. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
BALTIMORE, MD 21202
410-662-6500

duty stations.

## COUNT I
### False Imprisonment by All Defendants

41. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

42. The threat of force by the Security Guard Defendants compelled the Plaintiff to follow them to a back room in the Horseshoe Defendants' building against the Plaintiff's wishes.

43. Defendants deprived the Plaintiff of his liberty without the Plaintiff's consent and without legal justification.

44. The Security Guard Defendants placed Plaintiff in a room, told the Plaintiff that he was not free to leave, and placed a security guard by the only exit door, thereby restraining the Plaintiff from leaving the property.

45. There were no reasonable means by which the Plaintiff could escape the confinement or freely leave.

46. In this manner all of the Defendants deprived the Plaintiff of personal liberty without his consent and without legal justification.

47. The Security Guard Defendants intentionally detained the Plaintiff and placed a "911" telephone call to request that the Baltimore City Police perform a warrantless arrest of the Plaintiff for allegedly committing larceny.

48. The Security Guard Defendants took this action even though they knew that they did not have probable cause or legal authority to imprison the

LAW OFFICES OF
E. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
BALTIMORE, MD 21202
410-662-6500

Plaintiff.

49. The Security Guard Defendants also intentionally provided false information to a Baltimore City police officer that resulted in the officer placing the Plaintiff in handcuffs for approximately 15 minutes.

50. Security Guard Defendants intentionally attempted to extort a payment of between $300.00 and $400.00 from the Plaintiff.

51. The Security Guard Defendants acted maliciously in providing the false information to the police officer because they knew that the information they were providing the to the police officer was false.

52. Ultimately the police officer determined that there was no probable cause to imprison the Plaintiff and removed the handcuffs because the Plaintiff had not stolen another patron's payout ticket.

53. The actions of the Security Guard Defendants caused the Plaintiff to be unlawfully deprived of his liberty to leave the holding room and the casino.

54. The Plaintiff was detained against his will for at least 60 minutes.

55. The Security Guard Defendants' actions were not supported by a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a curious man in believing the accused is guilty.

56. Specifically, the Security Guard Defendants had access to surveillance video recordings that failed to establish any legitimate basis for imprisoning the Plaintiff.

57. The Security Guard Defendants also falsely reported to the police

LAW OFFICES OF
E. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
BALTIMORE, MD 21202
410-662-6500

officer that a factual basis existed for a warrantless arrest.

58. As a result of the actions by the Security Guard Defendants in their capacity as agents of the Horseshoe Defendants, Plaintiff suffered damage by being unlawfully held against his will for an extended period of time.

59. The Security Guard Defendants acted deliberately with wrongful motive and with the intention to imprison the Plaintiff against his will.

## COUNT II
### Defamation by All Defendants

60. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

61. The Security Guard Defendants made defamatory statements to a Baltimore City police officer and Fadi Tahhan alleging that the Plaintiff had stolen slot machine winnings from another patron.

62. These defamatory statements were provably false because the Plaintiff had not stolen a slot machine payout ticket from another casino patron.

63. The Security Guard Defendants knew that the defamatory statements were provably false because they had access to surveillance camera footage that demonstrated that the Plaintiff had not stolen a slot machine payout ticket from another person.

64. Notwithstanding this knowledge, the Security Guard Defendants falsely represented to a Baltimore City police officer that the Plaintiff had stolen a slot machine payout ticket from another person.

LAW OFFICES OF
E. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
BALTIMORE, MD 21202
410-662-6500

11

65. The defamation alleged herein was willful and with malice. The Security Guard Defendants had actual knowledge that the Plaintiff had not stolen a slot machine payout ticket from another person.

66. Alternatively, the Security Guard Defendants did not have any reasonable basis to believe that the Plaintiff had not stolen slot machine winnings from another patron.

67. As a result of this conduct, action and inaction of the Security Guard Defendants in their capacity as agents of the Horseshoe Defendants, Plaintiff has suffered loss and damage including, but not limited to, loss of liberty, mental anguish, humiliation, embarrassment and emotional distress.

68. The defamation was willful, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff such as to justify an award of punitive damages against Defendants.

## COUNT III
### Negligence by the Horseshoe Defendants

69. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

70. An employment or other agency relationship existed between the Horseshoe Defendants and the Security Guard Defendants.

71. As agents and employees of the Horseshoe Defendants, the Security Guard Defendants falsely arrested the Plaintiff and made defamatory statements about the Plaintiff to a Baltimore City police officer, including false statements

LAW OFFICES OF
E. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
BALTIMORE, MD 21202
410-662-6500

that the Plaintiff had stolen slot machine winnings from another person.

72. The Horseshoe Defendants owed the Plaintiff a duty of care with respect to the selection, training, supervision, and retention of its security guards to prevent wrongful imprisonment and the defamation of the casino's patrons,

72. The Horseshoe Defendants failed to use proper care in selecting, training, supervising or retaining its security guards.

74. The Horseshoe Defendants' breach of the duty of care it owed to the Plaintiff likewise proximately caused Plaintiff's injuries as alleged herein.

75. The Horseshoe Defendants knew or should have known by the exercise of diligence and reasonable care that its security guards were capable of inflicting harm of this type.

76. As a result of this conduct, action and inaction of the Horseshoe Defendants, Plaintiff has suffered loss and damage including, but not limited to, loss of liberty, mental anguish, humiliation, embarrassment and emotional distress.

WHEREFORE, Plaintiff Issam D. Suaoud demands judgment against Defendants Caesars Baltimore Management Company, LLC; CBAC Borrower, LLC; John Doe No. 1; and John Doe No. 2, jointly and severally, in an amount in excess of $75,000.00 for compensatory and punitive damages, together with interest, costs, and attorney fees.

LAW OFFICES OF
:. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
)ALTIMORE, MD 21202
410-662-6500

## JURY DEMAND

Plaintiff Issam D. Suaoud demands a trial by jury.

Dated: March 15, 2017        Respectfully Submitted,

_____
E. David Hoskins, Esq.
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
davidhoskins@hoskinslaw.com

_____
Steven B. Isbister, Esq.
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
stevenisbister@hoskinslaw.com

## CERTIFICATE OF SERVICE

I certify that on March 15, 2017, I served a copy of the foregoing via first class mail, postage pre-paid, to:

Caesars Baltimore Management Company, LLC
1525 Russell Street
Baltimore, Maryland 21230

_____
Steven B. Isbister, Esq.

LAW OFFICES OF
E. DAVID HOSKINS
16 E. LOMBARD ST.
SUITE 400
BALTIMORE, MD 21202
410-662-6500

14