## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

| | | |
|---|---|---|
| **ISSAM DAAS SUAOUD** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil Action No. 1:17-cv-00899** |
| **CAESARS BALTIMORE** | * | |
| **MANAGEMENT COMPANY,** | | |
| **et al.** | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFAULT SHOULD NOT BE ENTERED AGAINST THE DEFENDANT AS A REMEDY FOR ITS SPOLIATION OF EVIDENCE

Plaintiff, Issam D. Suaoud, by his undersigned counsel, respectfully requests that this Court issue an order requiring that Defendant show cause why a default judgment should not be entered against them based upon its spoliation of evidence in this case.

"The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences." *Thompson v. U.S. Department of Housing & Urban Development*, 219 F.R.D. 93, 100 (D.Md. 2003). Spoliation is "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Id.* (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir.2001)); *see also Sampson v. City of Cambridge*, 251 F.R.D. 172, 179 (D.Md.

1

2008) (citation omitted); *Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506, 510 (D.Md.2005) (citation omitted).

This motion requests the Court issue an order requiring the Defendant to show cause why a default judgment should not be entered against it for the inexcusable failure to safeguard the video evidence showing the manner in which it wrongfully detained and treated the Plaintiff.

### FACTUAL BACKGROUND

The conduct at issue in this lawsuit occurred on December 26, 2016. After being alerted by another patron that slot machine winnings had been stolen, the Defendant was able to identify the following person cashing the ticket that had allegedly been taken:



The ticket was cashed at 4:14 AM on December 26th by a patron with gray hair, wearing a maroon jacket with a plaid hood.

Notwithstanding these obvious identifying features, shortly after 4:14 AM, the Defendant "back roomed" the Plaintiff where he was detained and ultimately handcuffed by a Baltimore City Police Officer.

Here is what the Plaintiff looked like on the morning he was "back roomed" by the Defendant's agents:



In other words, the casino detained a bald man wearing glasses and a black jacket when they knew that the person who had cashed the ticket had gray hair and was wearing a maroon jacket with a plaid hood.

The casino later found the suspect with the plaid hood and, at approximately 5:55 AM, took him to the same back room where the Plaintiff just a few minutes earlier had been detained and handcuffed. Here is a depiction of what is shown on the back room video:



Undersigned counsel were retained shortly after the incident, visited the scene with the Plaintiff, and on December 31st sent a letter requesting that the video recordings be preserved. **Exhibit 1.** The letter was addressed to an entity called "Caesars Baltimore Management Company, LLC" and sent to "7 St. Paul Street, Suite 820."[1] The entity called "Caesars Baltimore Management Company, LLC" regularly appears in the dockets of the Maryland state court system in actions where employees of the Casino have their wages garnished. *See* **Exhibit 2**. The letter was mailed by Priority U.S. Mail and was never returned by the U.S. Postal Service.

A copy of this letter was mailed to Tim Donovan, Esq., Executive Vice President and General Counsel at Caesars Entertainment Corporation, One Caesars Palace Drive, Las Vegas, NV 89109. This letter was also mailed by Priority U.S. Mail and was never returned by the U.S. Postal Service.

---

[1]   This was the address of the resident agent listed in the records of the Maryland SDAT.

4

The proof of delivery information provided by the U.S. Postal Service is attached hereto as **Exhibit 3**.

The letter requested preservation of "all records or recordings of phone calls or other communications with law enforcement authorities during the above listed time period or otherwise known to be related to Mr. Suaoud." **Exhibit 1**.

The letter also specifically requested the retention of all video and audio recordings of the Horseshoe Baltimore Casino's monitored areas and even identified the specific areas where the incident occurred:

> Mr. Suaoud has reason to believe that many of the relevant actions took place in the following locations:
>
> 1)   the area around the "4x Emeralds and Shamrocks" slot machines on the first floor;
>
> 2)   the area around the "Gold Rush Penny Progressive" slot machines on the first floor;
>
> 3)   the area around the "Lord of the Rings - The Fellowship" slot machines on the first floor;
>
> 4)   the area around the "Lord of the Rings - Land of Mordor" slot machine on the first floor;
>
> 5)   the area around the "Mood Goddess" slot machines on the first floor;
>
> 6)   the area around the "Colossal Diamonds" slot machine on the second floor;
>
> 7)   the pathway along the casino floor beginning at the "Colossal Diamonds" slot machine, past the Total Rewards window, past the Cashier window, to the employee hallway on the second floor.

*Id.*

Despite this notice, Defendant destroyed the back room video that was taken between 4:14 AM and 5:55 AM when the gray haired suspect was taken into the back room. Through this action, Defendant intentionally destroyed the portion of its surveillance recordings that would have shown clearly how the Plaintiff was treated in the back room and has thus deprived the Plaintiff from critical evidence in support of his claims.

Casinos in Maryland are required to have surveillance systems. Specifically, COMAR 36.03.11.04 requires that casinos install and maintain a sophisticated video recording system and retrain the recordings for specified periods. All recordings are to be "retained for a minimum of 14 days." *Id.* at (1). However, "[a] A surveillance recording of suspicious activity, suspected or alleged regulatory violations, or suspected or alleged criminal activity shall be retained for a minimum of 30 days." *Id.* at (2).

Thus, Defendant was required by regulation to retain the video recordings until at least January 25, 2017, well after the letter from undersigned counsel was delivered.

## **ARGUMENT**

When spoliation has occurred, a court may impose sanctions, ranging from dismissal or judgment by default, preclusion of evidence, imposition of an adverse inference, or assessment of attorneys' fees and costs. *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 506 (D. Md. 2009), citing *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. at 191 and *Chan v. Triple 8 Palace, Inc.*, No. 03CIV6048(GEL)(JCF), 2005 WL 1925579, at *4 (S.D.N.Y. Aug. 11, 2005). Before ruling on a spoliation motion, a court may have to hold an evidentiary hearing to develop facts needed to rule on the motion. *Id.*

In order to obtain sanctions for spoliation the moving party must prove the following elements:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

CITE 632 F. Supp. 2d at 509 (D. Md. 2009).[2]

Each of the elements are present in this case.

### A.     The duty to preserve was triggered on December 26, 2016.

With respect to the first element, "[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Goodman,* quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). In this case, the Defendant was on notice at the time of the incident that they had improperly imprisoned the Plaintiff. They knew there was video evidence of the incident because the police officer reviewed it at the time and determined then and there that there was no basis for the detention of the Plaintiff by the Defendant.

This is best demonstrated by the fact that the Defendant has retained video surveillance coverage for the period immediately before and immediately after its detention of the Plaintiff, a clear indication that it reasonably should know that the

_____

[2]     Citing *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 101 (D. Md. 2003); *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 220 (S.D.N.Y.2003)).

video of the back room from 4:14 AM to 5:55 AM could be relevant to potential litigation.

Additionally "[p]re-filing communications between the litigants can ... provide constructive notice that litigation is likely. Demand letters stating a claim may be sufficient to trigger an obligation to preserve." Shira A. Scheindlin, Daniel J. Capra & The Sedona Conference, Electronic Discovery and Digital Evidence: Cases and Materials 106 (2008). In this case, the Defendant received a written demand to preserve the video evidence and destroyed it anyways.

Once a party reasonably anticipates litigation, it is obligated to suspend its routine document retention/destruction policy and implement a "litigation hold." *Goodman v. Praxair Servs., Inc.,* 632 F. Supp. 2d at 509 (D. Md. 2009), citing *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 101 (D. Md. 2003).

"Relevant documents" includes the following:

[A]ny documents or tangible things (as defined by [Fed.R.Civ.P. 34(a)) ] made by individuals "likely to have discoverable information that the disclosing party may use to support its claims or *512 defenses." The duty also includes documents prepared for those individuals, to the extent those documents can be readily identified (e.g., from the "to" field in e-mails). The duty also extends to information that is relevant to the claims or defenses of any party, or which is "relevant to the subject matter involved in the action." Thus, the duty to preserve extends to those employees likely to have relevant information—the "key players" in the case.

*Goodman,* at 509, quoting *Zubulake*, 220 F.R.D. at 217–18 (footnotes omitted).

The missing video recording clearly falls within the scope of relevant documents, especially because it would have illustrated precisely how the Plaintiff was treated while in the back room of the casino.

Thus, Defendant was obligated to implement a litigation hold with respect to the electronically stored video information relating to the incident and failed to do so.

**B.**     **<u>The video recording is highly relevant</u>**.

Defendant's destruction of evidence has substantially prejudiced Plaintiff's ability to prosecute his claim because it is the only direct evidence of the incident and it would have provided direct support for the Plaintiff's testimony. This is obvious to the Defendant, and is precisely why the video recordings were destroyed. The video recordings would have allowed the jury to determine the egregiousness of the detention and handcuffing of the Plaintiff and provided the factual basis to allow consideration of punitive damages.

**C.**     **<u>Culpability and sanction.</u>**

There are three possible states of mind that can satisfy the culpability requirement: bad faith/knowing destruction; gross negligence, and ordinary negligence. *Goodman,* at 518, citing *Thompson*, 219 F.R.D. at 101 and *Residential Funding v. Degeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir.2002).

The degree of fault impacts the severity of the sanction, and when the harshest of sanctions, such as summary judgment or default judgment, should be implemented. In *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001), the spoliation issue addressed was alterations made to the plaintiff's vehicle that were tantamount to

destroying the "sole piece of evidence" in the case. 271 F.3d at 585. Based on the "deliberate or negligent" actions of the plaintiff, the defendant was denied "access to the only evidence from which it could develop its defenses adequately." *Id.* at 594. Accordingly, without addressing the egregious conduct of the plaintiff, the appellate court ruled that the defendant had suffered "irreparable prejudice," and upheld the district court's granting of summary judgment in favor of the defendant. *Id.* at 594–95. The Fourth Circuit further explained that courts should impose sanctions that dispose of a case — i.e. determine liability against the offending party — only in the most egregious circumstances:

> [T]o justify the harsh sanction of dismissal, the district court must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.

*Silvestri,* 271 F.3d at 593.

In this case, the Defendant's conduct meets both tests justifying the ultimate sanction of entry of a default judgment on liability. First, the Defendant was on actual notice of the claim and the need to preserve the video recordings well within the 30 day window for preservation established by COMAR but nonetheless allowed the evidence to be destroyed. The fact that the casino retained the video recordings both before and after the Plaintiff was back roomed also demonstrates that it knew that the evidence needed to be retained.

Second, the destruction of the videotape is equivalent to the type of destruction of the automobile that was at issue in *Silvestri* because it has significantly prejudiced the Plaintiff's ability to present his most compelling case to the jury.

For this reason, the ultimate sanction of default is appropriate.

Should the court decide not to go that far, then the court should rule that the following adverse jury instruction will be provided:

> Defendants at one time possessed a video recording of the incident but destroyed that evidence and for this reason you are to assume that the video recording was unfavorable to the Defendants and would have supported the Plaintiff's testimony.

A showing of bad faith is not a prerequisite to obtaining an adverse jury instruction:

> [T]he trial court has broad discretion to permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence. While a finding of bad faith suffices to permit such an inference, it is not always necessary.... An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.

*Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995).

### D.   <u>The Plaintiff is also entitled to costs and attorneys' fees</u>.

A court may award a prevailing litigant the litigant's reasonable expenses incurred in filing a motion seeking to remedy spoliation, including attorney's fees. *Goodman*, 632 F. Supp. 2d at 524, citing *Chan v. Triple 8 Palace, Inc.*, 2005 WL 1925579, at *10 ("The plaintiffs are also entitled to an award of the costs, including

attorneys' fees, that they incurred in connection with this motion...");  *Goodman,* 632 F. Supp. 2d at 524, citing, *Leon v. IDX Sys. Corp.*, No. C03–1158P, 2004 WL 5571412, at *5 (W.D.Wash. Sept. 30, 2004) (dismissing plaintiff's claim due to bad faith spoliation, and requiring plaintiff to pay defendant the reasonable expenses it "incurred investigating and litigating the issue of [the plaintiff's] spoliation").

Attorneys' fees and costs can also be awarded for the additional discovery that is made necessary by the spoliation. *Goodman,* 632 F. Supp. 2d at 523-24, citing *Cache La Poudre Feeds, LLC,* 244 F.R.D. at 637 (requiring defendant to pay the costs associated with the plaintiff taking a deposition and filing a motion for relief after defendant "interfered with the judicial process" by wiping clean computer hard drives); *Trigon Ins. Co. v. United States*, 234 F.Supp.2d 592, 593–94 (E.D.Va.2002) (noting defendant was previously ordered to pay for the plaintiff's "expenses and fees incurred in its efforts to discern the scope, magnitude and direction of the spoliation of evidence, to participate in the recovery process, and to follow up with depositions to help prepare its own case and to meet the defense of the [defendant]"); *Zubulake, supra*, 220 F.R.D. at 222 (ordering defendant to "bear [plaintiff's] costs for re-deposing certain witnesses for the limited purpose of inquiring into issues raised by the destruction of evidence and any newly discovered e-mails").

Had the video recording not been destroyed it would have allowed for the streamlining of deposition discovery because the video would have documented precisely what happened and it would not have been necessary to have witnesses recount their own recollection of what was observed and when. Without the video, the

depositions of the security guards can be expected to last much longer and the Plaintiff's attorneys' should be compensated for having to spend this extra time on depositions as well as for the costs of the transcripts.

<u>**RELIEF REQUESTED**</u>

For the reasons set forth above, the Plaintiff requests that the Court issue an order requiring that the Defendant show cause why it should not be sanctioned for allowing the video recordings of the incident at issue in this litigation to be destroyed, schedule and evidentiary hearing and appropriately sanction Defendant for the spoliation.

Dated: June 20, 2017,                          Respectfully Submitted,


/s/ *E. David Hoskins*
E. David Hoskins, Esq., No. 06705
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
stevenisbister@hoskinslaw.com


/s/ *Steven B. Isbister*
Steven B. Isbister, Esq. , No. 14123
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
stevenisbister@hoskinslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2017, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court. The document has been served on all counsel of record via the Court's electronic filing system (CM/ECF).

*/s/ Steven B. Isbister*

Steven B. Isbister, Esq., No. 14123