IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| **ISSAM DAAS SUAOUD** | * |
|     **Plaintiff,** | * |
|     v. | *   Civil Action No. 1:17-cv-00899-JMC |
| **CAESARS BALTIMORE** | * |
| **MANAGEMENT COMPANY,** | |
| **et al.** | * |
|     **Defendants.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE WHY
DEFAULT SHOULD NOT BE ENTERED AGAINST THE DEFENDANT
AS A REMEDY FOR ITS SPOLIATION OF EVIDENCE**

Plaintiff, Issam D. Suaoud, by his undersigned counsel, submits this reply memorandum in further support of his motion for an order requiring that Defendant CBAC Borrower, LLC, show cause why a default judgment should not be entered against it, or in the alternative, the Court should not order other appropriate measures, based upon its spoliation of evidence in this case.

### A.     The Plaintiff's Motion is timely and warranted by Defendant CBAC's admissions

Contrary to the melodramatic protestations contained in Defendant CBAC Borrower, LLC's ("CBAC") Opposition to Plaintiff's instant motion (ECF 28, Def.'s Opp.), Plaintiff's request for this Court to examine evidence concerning Defendant CBAC's loss of video footage of the incident at the center of this case, and to determine an appropriate sanction, is timely and appropriate. Motions concerning the alleged

spoliation of evidence "should be filed 'as soon as reasonably possible after discovery of the facts that underlie the motion [ ... ] because resolution of spoliation motions are fact intensive.'" *Hoai Thanh v. Ngo*, No. CIV. PJM 11-1992, 2015 WL 2227916, at *21 (D. Md. May 8, 2015), reconsideration denied sub nom. *Hoai Thanh v. Hien T. Ngo*, No. CV PJM 11-1992, 2016 WL 8671851 (D. Md. June 24, 2016) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 508 (D.Md.2009)).

On May 26, 2017, Defendant CBAC responded to Plaintiff's written discovery requests. Def.'s Opp. Ex. 1. In its written answers to Plaintiff's interrogatories, CBAC admitted that on December 26, 2016, its video surveillance system recorded Plaintiff's activities at CBAC's Horseshoe Baltimore Casino. Def.'s Opp. Ex. 1, Answer to Interrog. No. 4. These activities included Plaintiff's alleged theft of another person's slot machine payout ticket and Plaintiff's contact with CBAC's agents on the casino floor and in a back room area. *Id.* CBAC also admitted that Plaintiff was not the alleged thief. *Id.* However, in response to Plaintiff's request that CBAC identify all photographic or video records of the incident referred to in the complaint, CBAC stated that it was "in possession of video of the person who took the slot machine payout ticket that is the subject of the Complaint." Def.'s Opp. Ex. 1, Answer to Interrog. No. 10. Indeed, CBAC has provided no photographic or video recording depicting Plaintiff's visit to CBAC's casino on December 26, 2016, despite its admission that at one time it possessed such video recordings.

As a result of these admissions in CBAC's responses to Plaintiff's written discovery requests, on June 20, 2017, Plaintiff filed the instant motion concerning

CBAC's spoliation of the video evidence. Among the issues before a Court on a spoliation motion include:

> [W]hen the duty to preserve commenced, whether the party accused of spoliation properly complied with its preservation duty, the degree of culpability involved, the relevance of the lost evidence to the case, and the concomitant prejudice to the party that was deprived of access to the evidence because it was not preserved.

*Goodman*, 632 F. Supp. 2d at 508. The discovery period of this case began when the Court issued its Scheduling Order on April 17, 2017, and continues through November 17, 2017. (Doc No. 22). However, the issues raised by CBAC's alleged loss of highly probative evidence which had been solely under CBAC's control will have a significant effect on the Plaintiff's discovery efforts. Therefore, Plaintiff's motion seeks to involve the Court in addressing the alleged loss of evidence at this early stage in the discovery process so that the Plaintiff is able to focus his time and resources during the discovery window on those facts that it will be required to present at trial, without unnecessarily disrupting the schedule set for this case. See *Goodman*, 632 F. Supp. 2d at 508 ("The least disruptive time to undertake this is during the discovery phase, not after it has closed").

The spoliation of evidence is a serious issue that needs to be determined early and when discovery is still open. Whether CBAC believes or fears that Plaintiff's motion has somehow has created "settlement leverage" is besides the point and, most certainly, is not a legal or factual basis that excuses the destruction of evidence that has occurred in this case.

## B. The Plaintiff has demonstrated a sufficient basis for the Court to exercise its authority to address CBAC's spoliation of the video surveillance footage

Presuming that CBAC has accurately represented that its casino's video surveillance system stores information digitally in a computer-based system, as opposed to an analog recording system[1], Rule 37(e) of the Federal Rules of Civil Procedure governs this Court's review of CBAC failure to preserve this electronically stored information. Specifically Rule 37(e) provides:

> (e) If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Therefore, review of Plaintiff's motion first requires the Court to consider three threshold questions: 1) whether CBAC possessed potentially relevant *digital* video

---

[1] See Def.'s Opp. at 5. CBAC failed to support its claim that the video recordings were stored digitally with an affidavit or other admissible evidence.

records that have since been lost and which cannot be restored or replaced through additional discovery; 2) whether CBAC had a duty to take reasonable steps to preserve the digital video records that are now lost, and; 3) whether CBAC failed to take reasonable steps to preserve those video records. If the Court finds that that all three of these elements have been met, then it must proceed to consider whether CBAC acted with the intent to deprive Plaintiff of this information, or, even if the deprivation was not intentional, if Plaintiff has been prejudiced by this loss.

A review of the facts that have been presented to this Court will establish that Plaintiff has demonstrated a sufficient basis for the Court to award sanctions or other appropriate remedies against CBAC, or, in the alternative, to hold an evidentiary hearing or allow greater Plaintiff additional discovery into the underlying facts.

> **1. CBAC has admitted that it once possessed relevant video records, but claims that they have now been <u>destroyed</u>**

As previously discussed, Defendant CBAC admitted in its responses to Plaintiff's written discovery requests that its video surveillance system recorded Plaintiff's activities at CBAC's Horseshoe Baltimore Casino. Def.'s Opp. Ex. 1, Def.'s Answer to Interrog. No. 4. These video recordings showed the timing and nature of CBAC's investigation of the alleged theft, interactions of CBAC's agents with the Plaintiff and with the police officer who responded to CBAC's 911 phone call, and the Plaintiff's actions and reactions during this incident. Such documentary evidence would be unquestionably relevant to Plaintiff's claims against CBAC for false imprisonment, defamation, and negligence.

CBAC has stated that it no longer possesses these video records. Def.'s Opp. Ex. 1, Def.'s Answer to Interrog. No. 10. However, CBAC has not produced evidence in any admissible form concerning whether these video records could be restored or replaced through data recovery processes or from other sources. For example, CBAC has not produced admissible evidence concerning how and when CBAC determined those records were lost, whether these video records could be restored through data recovery efforts, whether CBAC kept backups of its video records beyond fourteen days, and whether it made any efforts to restore the videos from meta data or available backups after receiving Plaintiff's letter requesting that the casino's surveillance video records be preserved. *See* ECF 27, Pl.'s Mot. Ex. 1.

In its Opposition, CBAC merely alleges, without the support of an affidavit or other form of admissible evidence, that the video was "automatically recorded over by the Casino's routine video maintenance system" (Def.'s Opp. at 11) and that the recordings were lost on the early morning of January 9, 2017, pursuant to "the surveillance system's automated policy of recording over prior video after 14 days" (Def.'s Opp. at 9-10).

Defendant has failed to identify the digital hardware where the records were stored, the software used to store the records and "automatically" maintain the records, any methods used to determine whether the video could be provided, and, apparently, has failed to safeguard the digital storage device (i.e. hard drive) to minimize the number of times the footage was recorded over even after the date Defendant acknowledges the letter from Plaintiff's counsel was received.

### 2. CBAC had a duty to preserve the video records in anticipation of litigation and pursuant the regulations of the State of Maryland

The second step of the Court's threshold examination of CBAC's alleged spoliation of evidence under Rule 37 is to consider whether CBAC had a duty to preserve its surveillance video records of Plaintiff's visit to CBAC's casino on December 26, 1996. Rule 37(e) is based upon the common-law duty that "potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable." Fed. R. Civ. P. Committee Notes; s*ee also Goodman,* 632 F. Supp. 2d at 509 ("[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation" (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001))). Plaintiff does not presently possess evidence that CBAC failed to preserve relevant evidence after the initial complaint was filed on January 23, 2017. However, prior to January 9, 2017, the date that CBAC claims the sought after video records were lost, CBAC was put on notice of anticipated litigation by Plaintiff's counsel's written notice, the litigious history of the common casino practice of "backrooming" patrons, and, finally, by Maryland state regulations concerning casino's video record retention practices of suspicious or allegedly criminal activity.

### a. Plaintiff's counsel's letter demanding the preservation of evidence gave CBAC unambiguous notice that it should preserve the video records in anticipation of litigation

On December 31, 2016, Plaintiff's counsel mailed written notice of Plaintiff's intention to pursue litigation and a demand to retain evidence concerning the December 26, 2016, incident to two separate addresses connected with CBAC's casino. Pl.'s Mot. Ex. 1. Both of these notices were received by CBAC or its related corporate entities at a time when CBAC still possessed the requested video records, but CBAC has failed to produce any admissible evidence to explain why it failed to preserve the relevant records identified by Plaintiff's litigation hold letter..

On Tuesday, January 3, 2017, Plaintiff's litigation hold letter was delivered to the Maryland resident agent of Caesars Baltimore Management Company, LLC, which CBAC has stated is an agent of CBAC. *Id.;* Def.'s Opp. Ex. 1, Def.'s Answer to Interrog. No. 9. On Wednesday, January 4, 2017, Plaintiff's litigation hold letter was delivered to the office of Tim Donovan, the Executive Vice President and General Counsel of Caesars Entertainment Corporation in Las Vegas, Nevada. Pl.'s Mot. Ex. 1.

CBAC's Opposition attempts to excuse CBAC's failure to promptly act on the letter sent to Caesars Baltimore Management Company, LLC by making numerous assertions of fact concerning the process by which the resident agent forwarded its mail to "Caesar's mail routing office in Nevada" before it was returned to the casino in Baltimore. Def.'s Opp. at 9. But what CBAC does not explain is why the Court should consider any of these alleged facts when they are unsupported by any affidavit or other form of admissible evidence. Additionally, Plaintiff's mailing of this letter to Caesar's Baltimore Management Company, LLC, was a result of the multilayered corporate structure that Defendant has employed to operate its casino. A September 29, 2016,

filing to the Securities and Exchange Commission by Caesars Acquisition Company ("CAC"), recorded that CAC has executed an agreement to merge with Caesars Entertainment Corporation ("CEC"). *See* **Exhibit 1**, Caesars Acquisition Company, *Current Report (Form 8-K/A)*, at 2 (September 29, 2016). As part of this Current Report filing, CAC reported its ownership interest in "Caesars Baltimore Management Company LLC, which manages Horseshoe Baltimore." *See* **Exhibit 2**, Caesars Acquisition Company, *Current Report (Form 8-K/A), Ex. 99.1*, at 8 (September 29, 2016). Furthermore, CBAC Borrower, LLC and Caesar's Baltimore Management Company share the same Maryland registered agent and the same principal office address in Wilmington, Delaware. See **Exhibit 3**, *CBAC Borrower, LLC; Z15149420*, Md. Bus. Express, https://egov.maryland.gov/BusinessExpress/EntitySearch/BusinessInformation/Z15149420 (last visited July 18, 2017); **Exhibit 4**, *Caesars Baltimore Management Company, LLC; Z14227482*, Md. Bus. Express, https://egov.maryland.gov/BusinessExpress/EntitySearch/BusinessInformation/Z14227482 (last visited July 18, 2017). The Court should therefore ignore CBAC's attempt to blame its failure to timely review and act on Plaintiff's litigation hold letter on the Plaintiff not having sent his litigation hold letters to each and every one of the numerous and opaque corporate subsidiaries that own, manage, or operate the Horseshoe Baltimore Casino.

CBAC's Opposition also notes that Plaintiff's letter was sent to the Executive Vice President and General Counsel of Caesars Entertainment Corporation, but fails to address what happened after that letter was received, as if CBAC is not related to Caesars Entertainment Corporation. Def.'s Opp. at 9, n.6. Pursuant to the publicly

available records of Maryland's Video Lottery Facility Location Commission, Caesar's Entertainment Corporation, through subsidiary Caesars Baltimore Investment Company, LLC, was one of the "principal entities" behind CBAC Gaming, LLC, which applied to the Commission for the right to operate a casino in the city of Baltimore, and that "Timothy Donovan" was one of the "Officers/Principals" behind CBAC Gaming, LLC's application. *See* **Exhibit 5**, State of Maryland Video Lottery Facility Location Commission, *Register of Applications Received, Video Lottery Operation License in Baltimore City* (#2012-0101), (Sept. 23, 2011), http://gaming.mdlottery.com/wp-content/uploads/2010/09/Baltimore-City-Register-of-Proposals-9-23-11.pdf); *see also*, **Exhibit 6,** State of Maryland, Video Lottery Facility Location Commission, *CBAC Gaming, LLC Amended Proposal for a Video Lottery Operation License in Baltimore City, Addendum to July 31, 2012 Decision Statement*, at 2 (June 25, 2013), http://gaming.mdlottery.com/wp-content/uploads/2010/09/CBAC_Amended_Proposal_Decision_Statement_FINAL.pdf (recording the transfer of casino gaming license from CBAC Gaming to CBAC Borrower); *see also* **Exhibit 7,** Caesars New York, Licenses in Other Jurisdictions, at 4 (May 16, 2014) https://www.gaming.ny.gov/pdf/Redacted%20RFA%20Applications/Caesars%20New%20York/REDACTED/Revised%20Redacted%20102014/VIII.A.14.a..pdf (in which Caesars Entertainment Corporation identified CBAC Borrower, LLC as among its subsidiaries holding casino gaming licenses as part of an application for a gaming license to the State of New York, stating: "Caesars has an approximate 58% ownership interest in the entity manages [sic] this video lottery facility"). CBAC has yet

to disclose through either its counsel's assertions or other evidence, what, if anything, the general counsel of its majority corporate parent did upon receiving Plaintiff's notice on January 4, 2017. See also **Exhibit 8**, Caesars Acquisition Company, *Current Report (Form 8-K)*, (July 7, 2017) (identifying CBAC Borrower, LLC, as "the owner of the Horseshoe Baltimore and is a subsidiary of a joint venture among Caesars Growth Partners, LLC (which is a joint venture between Caesars Acquisition Company ("CAC") and Caesars Entertainment Corporation ("CEC"), an affiliate of Jack Entertainment LLC and other local investors").

Therefore, even if CBAC's assertions concerning when it actually became aware of Plaintiff's litigation hold letter were supported by admissible evidence, CBAC would not be able to avoid the fact that Plaintiff provided prompt and timely notice to CBAC and its corporate affiliates of Plaintiff's intention to pursue litigation at a time when CBAC admits that it still possessed the relevant evidence.

    **b.**  **"Backrooming" is a common practice in casinos across the country, as well as a <u>common source of litigation</u>**

CBAC's Opposition's description of the events on December 26, 2016, belie the nature of the interaction. *See* Def.'s Opp. at 8-9. Despite CBAC stating that Plaintiff voluntarily joined CBAC's agents in the backroom area "to discuss the issue of the payout ticket[,]" CBAC's answers to Plaintiff's interrogatories fail to record any such discussion or further line of inquiry or investigation by CBAC's agents with Plaintiff concerning the alleged theft. *See* Def.'s Opp. Ex. 1. Rather, Plaintiff has claimed that, at or before the time that Plaintiff arrived in the backroom, CBAC's agents called 911 and

then told the Plaintiff that he had to stay in the security office and could not leave while they were waiting for the police officer to arrive. *See* **Exhibit 9**, Pl.'s Answer to Interrog. No. 5 at 7 ("The Security Guard Defendants then informed the Plaintiff that they had called the police, that a police office was coming to the room, and that the Plaintiff could not leave"). Additionally, Plaintiff has claimed that CBAC's agents made oral statements to both the responding police officer and to Fadi Tahhan, Plaintiff's friend, that Plaintiff had stolen another casino patron's slot machine payout ticket. *See* Id. at 7-9. Plaintiff was placed in handcuffs by the police officer as a result of CBAC's agent's false. *Id*. Though the officer freed Plaintiff from his handcuffs upon viewing CBAC's surveillance records and determining that they had "the wrong guy," this was no simple "mistake." *Id*. at 9; Def.'s Opp. at 8-9. Rather, as Plaintiff has contended, CBAC through its agents, had falsely imprisoned the Plaintiff by depriving him of his liberty and had defamed him with statements claiming that they had observed Plaintiff committing theft.

Some states have adopted statutes or regulations that provide statutory defenses to casinos and their security agents against false imprisonment and related defamation claims. *See* Nev. Rev. Stat. Ann. § 171.1235 (West 2003) (protecting casinos or their agents from liability for false arrest, false imprisonment, slander or unlawful detention for the temporary detention of a casino patron, within in the gaming establishment, for a reasonable length of time, upon the reasonable belief of the casino's agents that the person being detained committed any felony, for the sole purpose of notifying law enforcement), N.J. Stat. Ann. §§ 5:12-113 to 116, 121 (protecting casinos and their agents from civil liability for false arrest, false imprisonment, slander, or unlawful detention for

the temporary and reasonable detention of a casino patron upon probable cause of the patron cheating, stealing, being under the legal drinking age, or a limited other set of offenses). However Plaintiff is not presently aware of any special authority that provides a casino operating in Maryland the authority to deprive someone of their liberty, even temporarily. And after incidents such as this which demonstrate the CBAC's willingness to call the police and have its customers handcuffed without even reviewing the video recording, there is absolutely no chance that the Maryland General Assembly would ever pass such legislation in Maryland.

CBAC also did not have a good faith basis to believe that the legal principle of the shopkeeper's privilege would forestall the reasonable anticipation of litigation by an individual that was mistakenly detained on the casino's property for a crime he did not commit. Maryland's common law shopkeeper's privilege is now codified at Md. Code Ann., Cts. & Jud. Proc. § 5–402(a), and provides that:

> A merchant or an agent or employee of the merchant who detains or causes the arrest of any person shall not be held civilly liable for detention, slander, malicious prosecution, false imprisonment, or false arrest of the person detained or arrested, whether the detention or arrest takes place by the merchant or by his agent or employee, if in detaining or in causing the arrest of the person, the merchant or the agent or employee of the merchant had, at the time of the detention or arrest, probable cause to believe that the person committed the crime of "theft," as prohibited by § 7-104 of the Criminal Law Article, of property of the merchant from the premises of the merchant.

Therefore, in certain circumstances, a "merchant" may have a complete affirmative defense to a claim of false imprisonment or defamation. *Id.* However, CBAC is operating

a casino, and is not a "merchant" within the meaning of the statute. *Id.* Additionally, the defense provided by the shopkeeper's privilege is only available if there was "probable cause to believe that the person committed the crime of 'theft,' . . . *of property of the merchant from the premises of the merchant.*" *Id.* Even if CBAC were a merchant and its agents had probable cause to believe that Plaintiff had taken another casino patron's slot machine payout ticket, the ticket was not the property of CBAC - it would have been the other patron's property. Additionally, to fall within the shopkeeper's privilege's protection, CBAC and its agents would have needed to wait to "detain or cause the arrest" of Plaintiff when Plaintiff was removing the stolen goods from "the premises of the merchant." As Plaintiff never attempted to leave the casino until the police officer had determined that Plaintiff was "the wrong guy," Plaintiff never attempted to remove himself, much less any property of CBAC, from CBAC's premises during the time that CBAC claims that it had probable cause to believe that Plaintiff had taken another patron's slot machine payout ticket. See **Exhibit 9**, Pl.'s Answer to Interrog. No. 5 at 5-9.

However, the most damning aspect of the legal principal of the shopkeeper's privilege to any attempt by CBAC to rely on its alleged "good-faith identification of Plaintiff" (Def.'s Opp. at 2) and alleged "probable cause to believe that Plaintiff committed a theft" (Def.'s Opp. Ex. 1, Def.'s Answer to Interrog. Nos. 16, 18), to escape from the fact that litigation could be reasonably anticipated as a result of its interactions with the Plaintiff on December 26, 2016, is the fact that that the shopkeeper's privilege is an *affirmative defense*. *Pegues v. Wal-Mart Stores, Inc.*, 63 F. Supp. 3d 539, 543 (D.

Md. 2014). It must be raised in response to a legal claim, and cannot be relied on to foreclose upon the possibility of valid litigation. *See Id.* ("But although the shopkeeper's privilege ultimately may shield [the defendant] from liability, it must be asserted as an affirmative defense and the existence of probable cause, where disputed, cannot be resolved by the court alone—much less resolved on a motion to dismiss") (citation omitted). Therefore, when CBAC relied on a "good faith basis" or "probable cause" to guide Plaintiff to an enclosed room within its property, invited a police officer to confront the Plaintiff in that room based on that probable cause, and witnessed the officer placing the Plaintiff in handcuffs, upon the the officer's determination, and the casino's apparent admission, that the cause for the initiation of its contact with Plaintiff was "mistaken," CBAC was firmly on notice that litigation could reasonably be anticipated and that it may need to prepare to prove an affirmative defense.

Additionally, in Maryland, the ancient common law principal of a lawful "citizen's arrest" authorizes private citizens to perform an arrest without a warrant only:

> when a) there is a felony being committed in his presence or when a felony has in fact been committed whether or not in his presence, and the arrester has reasonable ground (probable cause) to believe the person he arrests has committed it; or b) a misdemeanor is being committed in the presence or view of the arrester which amounts to a breach of the peace.

*Williams v. State,* 435 Md. 474, 499 n.13, 79 A.3d 931, 946 (2013) (quoting *Great Atlantic and Pacific Tea Co. v. Paul,* 256 Md. 643, 655, 261 A.2d 731, 738–39 (1970). However, CBAC cannot credibly contend that it made a citizen's arrest. The amount of the allegedly stolen slot machine payout ticket was under $400, and therefore the

alleged crime was only a misdemeanor. *See* Md. Code Ann., Crim. Law § 7-104(g)(2) ("a person convicted of theft of property or services with a value of less than $1,000, is guilty of a misdemeanor"). There has been no claim that the alleged misdemeanor theft was somehow violent or amounted to a "breach of the peace." Thus, CBAC lacked any general legal authority for it to detain Plaintiff without his consent.

Further, though casinos and their security practices are a new addition to the legal landscape in Maryland, there exists a significant body of cases across the country showing that casinos have not-infrequently faced claims related to defamation and false imprisonment when the casino's security personnel make a mistake of fact or mistake of law. *See Blue v. Harrah's N. Kansas City*, LLC, 170 S.W.3d 466, 474 (Mo. Ct. App. 2005) (casino could be held liable for false arrest performed by law enforcement officer because the casino's employees provided the officer with the false information that instigated the arrest); *Grosch v. Tunica Cnty.*, 2009 WL 161856, at *2 (N.D.Miss. Jan. 22, 2009) (casino found liable for compensatory and punitive damages to patron when casino personnel directed law enforcement to arrest the patron and seize the ID card of a suspected card counter); *Romanski v. Detroit Entm't, LLC*, 428 F.3d 629, 631–33 (6th Cir.2005) (plaintiff awarded $600,000 in punitive damages for false imprisonment after being detained and ejected from a casino, despite no allegation of physical injury). *See also* Webb Harrison. *Casino "Backrooming" and the Law: An Analysis of False Imprisonment Cases in American Casinos*, 20 Gaming Laws Review and Economics 38, 48 (2016). The robust record of lawsuits and damage awards, even in cases where the casino's security personnel did not physically contact plaintiff, should have placed

Defendant on notice that backrooming incidents — especially those resulting in detention of a mistakenly accused patron — will be the subject of future litigation.

        **c.    CBAC's suspicions and allegations that Plaintiff had committed a crime required that CBAC hold the video surveillance of Plaintiff 16 days longer than the regulatory minimum due to the likelihood of litigation**

Casinos in Maryland are required to have surveillance systems. Specifically, COMAR 36.03.11.04 requires that casinos install and maintain a sophisticated video recording system and retrain the recordings for specified periods. All recordings are to be "retained for a minimum of 14 days." Id. at (1). However, "[a] A surveillance recording of suspicious activity, suspected or alleged regulatory violations, or suspected or alleged criminal activity shall be retained for a minimum of 30 days." Id. at (2).

The regulation could not be clearer and mandated that "alleged criminal activity" recordings must be retained for 30 days. In this case, the Defendant called the police department, and alleged to the responding police officer that that Plaintiff had committed a crime which resulted in the Plaintiff being handcuffed before the officer had even viewed the available surveillance footage. The uncontested evidence in this case establishes that the Plaintiff was, until the time that the responding police officer determined that CBAC had "the wrong guy," alleged to have committed a crime (or at least suspected to have committed a crime) thus triggering the regulatory 30 day video record retention requirement.

        **3.    CBAC failed to take the reasonable steps to preserve its video records of Plaintiff's visit to CBAC's casino <u>on December 26, 2016</u>**

17

CBAC has not presented Plaintiff or the Court with *any* admissible evidence concerning its record retention practices, much less evidence that those record retention practices are reasonable. Plaintiff has requested documents related to its record retention policies and procedures in its written discovery requests to CBAC, but CBAC has thus far refused to provide them absent Plaintiff's consent to a protective order. *See* Def.'s Opp. Ex. 1, Def.'s Answer to Interrog. No. 24, 25, 26. The Defendant has not sought any such protective order from this Court, and Plaintiff is aware of no legal authority that requires it to agree to such an order in order to obtain otherwise valid discovery.

Additionally, CBAC's apparent mail processing practices do not support a finding that CBAC's 14 day video retention policy is reasonable. As Plaintiff's litigation hold letter was delivered to the casino's resident agent on January 3, 2017, but not reviewed until six days later after traveling to Nevada and back, CBAC's 14 day video retention period is effectively a less than 8 day video retention period for third parties who would seek to access the video records.

Therefore, as the Plaintiff has shown that the evidence of spoliation of video records relevant to this case is sufficient to satisfy Rule 37(e)'s threshold test, the Court must determine the appropriate action to address the spoliation.

### 4. Plaintiff has been prejudiced by CBAC's destruction of the relevant video evidence

Contrary to CBAC's Opposition's claim that the loss of the relevant video records has not resulted in prejudice to Plaintiff's case, the video records would have provided

Plaintiff with documentary evidence to refute CBAC's attempts to minimize its role in Plaintiff's detention and resulting damages. The video records would have helped establish Plaintiff's claim that his mistaken identification as a thief was not a reasonable mistake. These records would have shown the circumstances under which Plaintiff felt detained by CBAC's agents in the security office. Finally, the video records would have provided Plaintiff the ability to show the physical reactions he experienced as a result of his unjustified detention.

Additionally, this Court's scheduling order has limited each of the parties to 15 hours of depositions during discovery. (Doc No. 22). If CBAC had not lost the relevant video records, this documentary evidence would have allowed for Plaintiff to significantly streamline its lines of questioning during depositions because the video would have documented all interactions between the witnesses to the relevant events on December 26, 2016.

## RELIEF REQUESTED

At this juncture, the Plaintiff has made a sufficient showing under Fed. R. Civ. P. 37(e) that a legitimate issue of evidence spoliation exists in this case. Defendant CBAC has responded without presenting admissible evidence to refute this contention and without fully disclosing all facts relevant to the loss of the evidence, such as what efforts CBAC made to recover the relevant records on January 9, 2017, or what Tim Donovan, Caesars Entertainment Corporation's General Counsel, did upon receipt of Plaintiff's litigation hold letter on January 4, 2017. For this reason, the Plaintiff requests that the Court schedule an evidentiary hearing so that the Plaintiff can call and examine

witnesses to help determine whether there is any evidence that the loss of the relevant video evidence was due to an intentional act, and to determine the appropriate remedies available to address the prejudice that Plaintiff has suffered as a result of this loss of evidence. Alternatively, Plaintiff requests that the Court provide him an additional 20 hours of deposition time, so that he may develop additional evidence relating to the destruction of the video records.

Dated: July 18, 2017,            Respectfully Submitted,

>/s/ E. David Hoskins
> E. David Hoskins, Esq., No. 06705
> THE LAW OFFICES OF E. DAVID HOSKINS, LLC
> 16 East Lombard Street, Suite 400
> Baltimore, Maryland 21202
> (410) 662-6500 (Tel.)
> davidhoskins@hoskinslaw.com
>
> /s/ Steven B. Isbister
> Steven B. Isbister, Esq. , No. 14123
> THE LAW OFFICES OF E. DAVID HOSKINS, LLC
> 16 East Lombard Street, Suite 400
> Baltimore, Maryland 21202
> (410) 662-6500 (Tel.)
> stevenisbister@hoskinslaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2017, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court. The document has been served on all counsel of record via the Court's electronic filing system (CM/ECF).

> /s/ Steven B. Isbister
> Steven B. Isbister, Esq., No. 14123